**Vivian WOOLFOLK et al.**

v.

**Otis L. BROWN et al.**

**Civ. A. No. 225–70–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

April 29, 1975.

John M. Levy, Legal Aid Society, Roanoke, Va., Douglas Broadwater, Center on Social Welfare Policy of Law, New York City, for plaintiffs.

Theodore Markow, Richmond, Va., Harry W. Garrett, Jr., Com. Atty. Bedford County, Bedford, Va., Anthony F.

Troy, Asst. Atty. Gen. of Va., for defendants.

## MEMORANDUM

MERHIGE, District Judge.

Plaintiffs, who appear both individually and as members of the class they represent, were, at the time this suit was instituted, eligible to receive benefits pursuant to the Aid to Families with Dependent Children (AFDC) program established under Title IV of the Social Security Act of 1935, as amended, 42 U.S.C. § 601 et seq. They were, however, subject to, and their AFDC payments had been terminated as a result of, a provision in the Virginia public assistance plan declaring ineligible certain recipients who refused to accept an offer of employment. The defendants were at the time of suit various state and local welfare officials charged with the administration of Virginia's AFDC plan. Jurisdiction of the Court was attained by virtue of 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3).

To briefly recount the background and protracted history of this action, in May of 1967, just prior to Congressional enactment of the federal Work Incentive Program (WIN) under Part C of Title IV of the Social Security Act, 42 U.S.C. § 630 et seq., the State of Virginia adopted sections 211.4 E and F of the Virginia Manual of Policy and Procedure for Local Welfare Departments, hereinafter referred to as Virginia Work Rule I,[1] which was, like WIN, designed to reduce the State's welfare rolls by encouraging recipients to work.

On April 22, 1970, plaintiffs filed this action contending that Work Rule I created an unauthorized additional eligibility requirement for AFDC benefits which contravened the statutory mandate that state plans provide that "aid . . . shall be furnished with reasonable promptness to all eligible individuals." 42 U.S.C. § 602(a)(10). Plaintiffs also argued that the 1968 amendments to the Social Security Act establishing WIN rendered Work Rule I invalid in that Work Rule I was either in direct conflict with the federal provisions or would frustrate their effective implementation.[2]

On April 22, 1971, the Court, by memorandum decision, held that Work Rule I was inconsistent with and interfered with the Congressional design of the WIN program in that AFDC recipients exempted from WIN were subject to the sanction of denial of benefits for their failure to comply with the Work Rule; that under the Work Rule the sanction for noncompliance was termination of benefits to the entire AFDC family unit, whereas, under WIN, only the individual's benefits were terminated; and that the procedures for termination under the Work Rule were loose, vague and often arbitrary. In accordance with that opinion, the Court ordered that the defendants cease to enforce or implement Work Rule I or any regulation substantially similar to it and declared the Work Rule invalid for conflict with provisions of the federal statutes. On March 7, 1972, the United States Court of Appeals for the Fourth Circuit affirmed the decision and order of this Court. 456 F.2d 652 (4th Cir. 1972). On October 10, 1972, the United States Supreme Court denied defendants' petition for *certiorari*. 409 U.S. 885, 93 S. Ct. 112, 34 L.Ed.2d 141.

Shortly after the Fourth Circuit's affirmance of this Court's decision, the Virginia General Assembly, on April 10,

---

1. The text of Work Rule I is set forth in an earlier memorandum opinion in this action. See Woolfolk v. Brown, 325 F.Supp. 1162, 1164 (E.D.Va.1971).

2. Subsequent to the institution of this action, in July of 1970, sections 211.4 E and F of the Virginia Manual of Policy and Procedure were superseded by section 305.4, which incorporated child care requirements and certain insubstantial changes to the original regulation. See Woolfolk v. Brown, 325 F. Supp. at 1164 n. 1.

1972, enacted Senate Bill 84[3] which amended Title 63.1 of the Code of Virginia (1950) by placing upon local welfare departments the responsibility of attempting to locate reasonable employment opportunities for persons receiving public assistance. Pursuant to Senate Bill 84, on August 29, 1972, defendants promulgated Manual Transmittal #39[4] which amended section 305.4 of the Virginia Manual of Policy and Procedure for Local Welfare Departments and contained what is hereinafter referred to as Virginia Work Rule II.

On October 3, 1972, plaintiffs filed a motion by which they sought an injunction against the implementation of Work Rule II and a contempt judgment, contending that the new Work Rule violated this Court's order of April 22, 1971. At the same time, defendants moved for summary judgment arguing that Work Rule II was properly authorized by amendments to the Social Security Act, Pub.L.No. 92–223, 42 U.S.C. § 602(a)(19)(A)–(G) and 42 U.S.C. § 603(c) and (d), known as the Talmadge Amendments.

While finding that Work Rule II offered improvements over objectionable sections of the former Work Rule, the Court, on April 23, 1973, concluded that the Talmadge Amendments did not affect the design of the WIN program and the Congressional intent that WIN be exclusive. The Court, therefore, held that Work Rule II was violative of the preemptive effect of WIN. Accordingly, its previous injunction was interpreted to include section 305.4 of the Virginia Manual, as amended by Transmittal #39, and adjudged the defendants to be in civil contempt, for which the Court did not impose sanctions.

The matter is presently before the Court upon defendants' motion to vacate the Court's injunctive orders of April 22, 1971 and April 23, 1973. In support of their motion, defendants rely primarily upon New York Department of Social Services v. Dublino, 413 U.S. 405, 93 S. Ct. 2507, 37 L.Ed.2d 688 (1973), and contend that *Dublino* creates a substantial change in the law from previous rulings of this Court. On the basis of *Dublino*, defendants further argue that the only issue now before the Court is whether some particular sections of the latest Virginia Work Rule, hereinafter referred to as Virginia Work Rule III, as embodied in Senate Bill 283 and the proposed final regulations to govern its implementation, contravene the specific provisions of the federal Social Security Act. It is the defendants' position that between Senate Bill 283, as it will be implemented, and WIN, there exists no conflict of substance "to merit judicial rather than cooperative federal-state resolution." 413 U.S. at 423 n. 29, 93 S.Ct. at 2518.

The Court notes initially that Senate Bill 283 was enacted by the Virginia General Assembly during its 1974 session. The legislation, as passed, amends Title 63.1 of the Code of Virginia (1950) by adding Chapter 6.2, Sections 63.1–133.7 through 63.1–133.15, and provides as follows:

Section 63.1–133.7. *Purpose of chapter.* —It is the purpose of this chapter of the public welfare laws of Virginia to promote self-reliance and civic responsibility to assure that limited State welfare funds be spent on behalf of those generally incapacitated and most in need and to cope with the fiscal hardships enveloping the Commonwealth of Virginia and its political subdivisions.

Section 63.1–133.8. *Definitions.*—For the purposes of this chapter, the following words or terms shall have the meaning ascribed to them by this section, unless the context otherwise requires:

(a) "*A reasonable employment opportunity*" is a job opportunity not beyond

3. The text of Senate Bill 84 is set forth in this Court's memorandum opinion of April 23, 1973. See Woolfolk v. Brown, 358 F. Supp. 524, 530 n. 2 (E.D.Va.1973).

4. Manual Transmittal #39 is also set forth in this Court's opinion of April 23, 1973. See Woolfolk v. Brown, 358 F.Supp. at 530.

the physical and intellectual capabilities of the individual and is not unreasonably disruptive of the duties owed his or her family, does not result in displacement of persons currently employed, offers an opportunity to such person to become partially or wholly self-supporting and provides reasonable compensation which will aid in restoring the economic well-being of the persons so employed as well as the economy of the political subdivision in which such recipient would be otherwise entitled to receive public assistance.

Reasonable compensation as used in subsection (a) above shall be construed to mean an amount not less than the federal or State minimum hourly wage, whichever is less, or, if the job is not covered by the federal or State minimum wage, then an amount equal to the prevailing wage rate for a comparable position in the immediate geographical area.

(b) *"Commission"* shall mean the Virginia Employment Commission.

(c) *"Local employment office"* shall mean the office of the Virginia Employment Commission which serves each political subdivision.

(d) *"An employable person"* shall mean a person age sixteen to sixty-five not rendered unable to work by reasons of: blindness; illness or significant and substantial incapacitation, either mental or physical, to the extent and of such duration that such illness or incapacitation prevents such person from performing services; full-time attendance in school if between the ages of sixteen and twenty-one; full-time satisfactory participation in an approved program of vocational training or rehabilitation; the need of such person to provide full-time care for other members of such person's household who are wholly incapacitated, or who are children under six or are children for whom required care is not otherwise reasonably available, notwithstanding diligent efforts by such person to obtain others to provide such care; the unavailability of transportation. In the case of incapacitation, mental or physical, the local board of public welfare shall seek and obtain the recommendation of the appropriate State vocational rehabilitation agency concerning employability. For purposes of this chapter, an applicant for or recipient of aid to dependent children who is enrolled and participating in the work incentive program shall not be considered an "employable person."

Section 63.1–133.9. *Filing of offers of employment with Virginia Employment Commission.*—Every person in a county or city shall have the right to file with the office of the Virginia Employment Commission serving that county or city, or with the local welfare or social services department specific bona fide offers of employment which shall include the qualifications required of persons to apply for such employment, the hours of work expected, and the compensation offered therefor. If made to the local welfare office, that office shall transmit the offer to the local employment office.

Section 63.1–133.10. *Determination of employable persons by local boards.*— The local board of public welfare or social services shall make a determination as to whether or not applicants or recipients are employable as defined in § 63.1–133.8(d), or available for training. If such applicant or recipient is deemed employable by the local board then such applicant or recipient shall be charged with the responsibility of complying with the provisions of § 63.1–133.12. An applicant or recipient shall be given an opportunity to present to the local board evidence that he is unemployable, as hereinabove defined.

Upon a finding by the local board that an applicant or recipient is employable, the local board shall require the applicant to complete the employment application form provided by the Virginia Employment Commission and shall refer such applicant or recipient to the local employment office for purposes of complying with § 63.1–133.12.

§ 63.1–133.11. *Responsibilities of Virginia Employment Commission.*—(a) Upon referral of any applicant or recipient to the local employment office pursuant to § 63.1–133.10, the Virginia Employment Commission shall be charged with the responsibility of attempting to locate employment or, in appropriate cases, providing training for such person. Notwithstanding the requirements of § 63.1–133.12, the Commission shall refer an employable person for participation in a program of occupational training when in the judgment of the Commission the person may thereby become trained for referral to available employment, or when the person may thereby become trained for referral to skilled or semi-skilled employment. The appropriate office of the Commission shall file with the local department of welfare or social services at least monthly a certificate setting forth the employment status of each public assistance applicant or recipient who has been referred pursuant to § 63.1–133.10, including, for those persons who are unemployed, a statement that such employment office has no opening in part-time, full-time, temporary or permanent employment in which the applicant or recipient is able to engage.

(b) A public welfare official responsible for the assistance and care of a person who, in the judgment of such official, is employable or potentially employable, may require such person to receive suitable medical care and/ undergo suitable instruction and/or work training. Any such person who willfully refuses to accept such medical and dental care, refuses or fails to report for or cooperate in a program of instruction and/or work training as required by the public welfare official, shall be ineligible to receive public assistance and care. However, the requirements of this provision relating to instruction and work training shall not apply in the case of a person who is not available for employment by reason of age, health or other disability.

(c) The provisions of this section shall not confer authority on a public welfare official to provide instruction which is available through the public school system, but regulations of the department may make provision for such authority when special need therefor is demonstrated.

§ 63.1–133.12. *Refusal to seek or accept employment; voluntary termination of employment.*—No public assistance shall be given to an employable person who has refused to register with the local employment office designated to serve the political subdivision in which such person seeks public assistance, or who has refused to accept reasonable employment or training without good cause. Registration with the local employment office shall be accomplished by written execution of the Commission's employment application form in the local department of public welfare or social services office or in the local employment office.

A person shall also be deemed to have refused to accept such employment if he willfully fails to report for an interview at a local employment office or with a prospective employer when requested to do so by such office.

Such willful failure or refusal shall be reported immediately to the local department of public welfare or social services by such employment office.

Any person who voluntarily terminated his employment or voluntarily reduced his earning capacity for the purpose of qualifying for public assistance or aid to dependent children or a larger amount thereof shall be disqualified from receiving such assistance for seventy-five days from such termination or reduction, unless otherwise required by federal law or regulation. Any person who applies for public assistance or aid to dependent children or requests an increase in his grant within seventy-five days after voluntarily terminating his employment or reducing his earning capacity shall, unless otherwise required by federal law or regulation, be deemed

to have voluntarily terminated his employment or reduced his earning capacity for the purpose of qualifying for such assistance or a larger amount thereof, in the absence of evidence to the contrary supplied by such person.

§ 63.1–133.13. *Appeal from decision of local board.*—If public assistance is denied, reduced or terminated pursuant to the requirements of this chapter, the applicant or recipient shall have the right to appeal such denial, reduction or termination under the provisions of § 63.-1–116 and applicable rules and regulations of the State Board of Welfare and Institutions.

§ 63.1–133.14. *Application of chapter.*—The provisions of this chapter shall apply to all local departments of welfare or social services and to all local offices of the Virginia Employment Commission. The State Department of Welfare and Institutions and the Virginia Employment Commission, as well as every local welfare or social services department and every local employment office, shall cooperate in the implementation of the provisions of this chapter. On or before January one, nineteen hundred seventy-five, every political subdivision in the State shall have in operation either a work incentive program or programs of employment and training pursuant to this chapter for public assistance applicants and recipients.

*Cross reference.*—As to abolition of the Department of Welfare and Institutions and creation of the Department of Welfare, see § 63.1–1.1.

§ 63.1–133.15: [Severability Clause].

The Court would further note that the proposed regulations of the Virginia Department of Welfare, which the defendants have designated "Work Rule Materials" (WRM), are designed to implement the enabling legislation provided in Senate Bill 283. Those regulations provide, *inter alia,* as follows:

SPECIAL PROVISIONS RELATED TO EMPLOYMENT AND TRAINING —Under the Code of Virginia, Section 63.1–133.7 through 63.1–133.15, as amended by the 1974 General Assembly, there are certain requirements with respect to employment which are applicable in GR and in localities not served by a Work Incentive Program (WIN) project in ADC.

Within the specified categories, each applicant for or recipient (i.e., member of the assistance unit) or financial assistance, unless exempt under the criteria listed below, is required as a condition of eligibility, to register with the Virginia Employment Commission for manpower services, training and employment. In addition, any individual who is exempt from the requirement but who wishes to volunteer for work or training, must be given the opportunity to register.

A. *Criteria for Exemption from Employment or Training Requirement.*—The eligibility worker carries responsibility at the time of initial application and eligibility redetermination for screening each applicant or recipient in the categories identified above to determine his employability or availability for training. An individual is not considered employable or available for training and is exempt from the requirement if he is:

1. *Blind.*

2. *Sixty-five years of age or over.* This means that any individual included in the assistance unit who meets this age requirement is exempt.

3. *A person under 16, or between the ages of 16 and 21, and attending school full time.* This means that an eligible ADC person over 16 and attending school less than full time is not exempt.

\* \* \* \* \* \*

4. *Ill or significantly and substantially incapacitated, physically or mentally, for employment.* This means that the eligible in-

dividual is exempt. If illness or incapacity is not obvious (i. e., loss of limbs, sight, etc.) and there is no other reason to consider the individual inappropriate for employment, a professional evaluation of the individual's condition is required to establish incapacity. Procedures described in the ADC Manual, Section 204.4 C, and in the Manual of Policy and Procedure, Volume II, Section 207.4, are applicable in securing information on incapacity. Exemption for temporary illness or injury is limited to 90 days from the date the illness or injury occurred; beyond this period, there must be a review, including medical evidence, to determine incapacity.

Any person found to be physically or mentally incapacitated is to be referred to Vocational Rehabilitation for screening of potential rehabilitation.

5. *The mother, or other specified relative, of a child under the age of six.* It should be noted that a pregnant mother is not exempt, unless a professional evaluation establishes incapacity as under Item 4 above. The mother or other relative of a child under six is to be advised of her option to register if she wishes and informed of child care services available in the event she chooses to volunteer for employment or training. If she later withdraws from training or employment, there is no penalty due to the voluntary nature of the commitment.

6. *An eligible or an Essential to Well-Being (EWB) person whose presence in the home is required on a substantially continuous basis to provide full-time care for other members of the household.*

a. Because of the illness or incapacity of another member of the household, there must be a medical determination that the other household member's condition does not permit self-care; it must also be established that the person to be exempted is the person who is needed to provide such care. The statement must indicate the probable duration of the household member's disability; when no longer needed in the caretaker role, the person exempt as "needed in the home" will be required to register.

b. To care for children under 6 or for children for whom required care is not otherwise reasonably available despite diligent efforts to secure such care from other sources.

7. *Receiving Vocational Training or Rehabilitation.* A person in full time attendance in an approved training or rehabilitation program on a regular planned basis with satisfactory participation toward completion of the program is exempt.

8. *A person for whom transportation is unavailable.*

\* \* \* \* \* \*

B. *Registration with the Virginia Employment Commission*—Registration of persons found appropriate for employment and those wishing to volunteer for work or training is to be accomplished at the time of the initial application and at the time of the eligibility review . . . . . The application form will be prepared by the eligibility worker or by the client with the worker's assistance . . . . The card will be signed by both the client and the worker. The card will then be forwarded to the local VEC office. A copy is to be maintained in the eligibility case records, and a copy is to be forwarded to the service staff.

Whenever there is a change of status indicating that the individual is to be removed from the list of registrants, a form is to be completed and sent to the Virginia Employment Commission as notification of the change of status.

C. *Provision of Services Related to Employment or Training*—Supportive services, needed to enable appropriate individuals to pursue job opportunities and to participate in employment or training, are to be provided. Each individual found appropriate for employment or training is to be referred to the social service staff in order that such services may be made available. No person shall be required to accept employment unless transportation and day care are available.

D. *Acceptance of Bona fide Offers of Employment*—In addition to utilizing the resources of the Virginia Employment Commission in locating work or training opportunities for public assistance recipients, State legislation places upon local welfare departments the responsibility to accept and transmit to the local employment office bona fide offers of employment from persons in the community (Section 63.1–133.9, Code of Virginia).

A "bona fide offer of employment" must state the nature and duration of the employment, the hours of work, the compensation offered, and the qualifications required of the employee.

A "reasonable employment opportunity" is specified in State law (Section 63.1–133.8, Code of Virginia) as one which:

1. Is not beyond the physical and intellectual capacities of the individual. This means that the individual would be able to carry out the responsibilities of the job from the standpoint of his physical condition, intellectual ability and level of education and training.

2. Is not unreasonably disruptive of the individual's duties to his family.

This provision would rule out employment involving—

a. working hours in excess of those customary to the specific occupation;

b. a distance from the individual's home requiring more than one hour's travel each way or, if no transportation is available to him, walking distance of more than one mile; the total commuting time to and from the work or training site to which the participant is assigned shall not normally exceed 2 hours, including deposit and pick-up of a child at an approved child care location, unless a longer commuting distance and time is generally accepted in the community; (The total participant day shall not exceed 10 hours including work or training time.)

c. working conditions or travel involving undue risk to health and safety;

d. unreasonable working hours, such as intermittent work in the course of a day, where transportation hardships for mother and child are involved; or,

e. the need for unreasonable changes in living arrangements.

In no case is an employment opportunity to be considered reasonable for an ADC caretaker unless adequate child care is available during the hours of work, plus the additional time required to transport and pick up the child.

3. Does not result in displacement of person currently employed.

4. Offers the individual an opportunity to become wholly or partially self-supporting. It is the

responsibility of the VEC to evaluate the employment opportunity from this standpoint.

a. *Part-time or temporary employment*—No minimum is necessarily placed on the number of hours of regular part-time employment which is to be considered a reasonable opportunity since some employment offered on a part-time basis may result in *expansion* based on the capabilities of the employee. Acceptance of part-time or temporary employment offering no prospect for expansion, is not to be required of the recipient since this offers no opportunity for ongoing partial self-support.

5. *Provides reasonable compensation*—"Reasonable" compensation will be no less than the federal or State minimum hourly wage, whichever is less, or if the job is not covered by the federal or State minimum wage, then an amount equal to the prevailing rate in the community for the particular type of employment.

E. *Refusal to Register for Employment or to Accept a Reasonable Employment Opportunity*—When an applicant for or recipient (i.e., member of the assistance unit) who is not exempt under the criteria listed in Section A., refuses, without good cause, to register with the Virginia Employment Commission, to participate in an available work or training program or to accept a reasonable employment opportunity actually available to him the following procedures are applicable:

1. *Refusal to register at the time of application.* The applicant who is found not to be exempt from the registration requirement according to the criteria specified in Section A is ineligible for public assistance if he refuses to register with the Vir-

ginia Employment Commission. It is essential, in discussing the work registration requirement with an applicant, that his status as to appropriateness be carefully assessed and that, if he feels he should not be required to register, he be given every opportunity to present his reasons and any evidence of unemployability. The possibility of employment or training should be presented as an opportunity to become wholly or partially self-supporting and to upgrade his level of living. It should be made clear that he will not be expected to accept employment or training which will cause undue hardship or disruption of family life and that services will be provided to enable him to participate, such as assistance in planning for child care and/or transportation. He should be advised of the applicable earned income exemptions and allowances for expenses of work or training. He should be reminded, particularly if he has never worked, of Social Security coverage.

If the individual still refuses to register and presents no acceptable basis for exemption, he is ineligible for assistance. In ADC, refusal by the caretaker to register does not affect the eligibility of the children and, if they are otherwise eligible, assistance to meet their needs is to be initiated. If the only eligible child is not exempt and refuses to register, the entire case is ineligible.

2. *Refusal to accept child care.* When an ADC caretaker is required to register, needed child care services are to be provided. When more than one type of child care is available, the caretaker may choose the type, but

if only one type is available and it meets required standards, she would be required to accept it if it is needed for her participation in employment or training. If she does refuse, her needs are to be removed from the grant and assistance is to be continued to the eligible members of the assistance unit and the EWB person, if any, with any income she has considered available to the assistance unit. It is the responsibility of the service worker to advise the eligibility worker of refusal to accept child care and to make arrangements for the hearing if an appeal is filed.

3. *Refusal to accept medical or dental care which would enable applicant/recipient to become employable.* When an employable or potentially employable person requires medical and/or dental care, such care may be available through Vocational Rehabilitation, Medicaid, or the State and Local Hospitalization Program. The decision as to the source of the needed care should be a mutual one, but, if none can be reached, the local agency makes the decision.

A person willfully refusing to accept medical or dental care (except surgery involving risk) which would render him employable is ineligible for public assistance.

4. *Refusal to accept or to report for employment.* If a nonexempt recipient fails to report to the VEC for an appraisal interview or to an employer for an employment interview or to accept a reasonable employment opportunity offered through the VEC, the VEC will notify the eligibility worker through the use of Form VEC/WR–101 on which the reason for refusal should be indicated, with an assessment of whether good cause for refusal exists. A copy of this form will also be sent to the service worker.

F. *Good Cause for Refusal*—In all instances of refusal to accept reasonable employment opportunity, the service worker will interview the client, evaluate the situation, assessing the reasons for refusal and report the results of the assessment to the eligibility worker . . . .

If the client continues to refuse to register or accept the available employment or training, it is the responsibility of the eligibility worker to make a determination, on the basis of available information, as to whether good cause for such refusal exists.

"Good cause" is considered to exist when—

a. the employment offered is not reasonable, as defined in Section D;

b. supportive services needed by the recipient to enable him to accept employment or training are not available.

G. *An applicant/recipient who voluntarily terminates his employment or voluntarily reduces his earning capacity.* Any person who voluntarily terminates his employment or voluntarily reduces his earning capacity for the purpose of qualifying for public assistance or for a larger grant, shall be disqualified from receiving any public assistance for a period of seventy-five (75) days from such termination or employment or reduction of earnings. Any person who applies for public assistance or aid to dependent children or requests an increase in his grant within seventy-five (75) days after voluntarily terminating his employment or reducing his earning capacity shall, unless otherwise required by federal law or regulation,

be deemed to have voluntarily terminated his employment or reduced his earning capacity for the purpose of qualifying for such assistance or a larger amount thereof, in the absence of evidence to the contrary supplied by such person.

H. *Information Sharing*—Joint efforts of the welfare department and the VEC are required to implement the work requirement. It is, therefore, essential that

1. The VEC notify the welfare department of any changes in participant status which have a bearing on the amount of the money payment or on the provision of supportive services.

2. The welfare department must notify the VEC promptly of all exempt or cancelled cases.

I. *Right of Appeal*—Any individual who is denied assistance or whose grant is reduced or terminated because of refusal to register for work or to accept or continue in work or training shall have the right to appeal such decision in accordance with the provisions in Manual of Policy and Procedure, Volume II, Chapter 800.[5]

 As a consequence of New York Department of Social Services v. Dublino, 413 U.S. 405, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973), the law is now clear that the Social Security "Act allows for complementary state work incentive programs and procedures incident thereto —even if they become conditions for continued assistance." *Id.* at 422, 93 S. Ct. at 2517. Equally clear after *Dublino*, however, is that it is the Court's re-

sponsibility not only to determine "whether or to what extent particular provisions of the Work Rules may contravene the purposes or provisions of WIN," *id.* at 423, 93 S.Ct. at 2518, but also to resolve any conflicts of substance between the two programs.

In this regard, plaintiffs, while conceding that states may develop methods for helping AFDC recipients return to gainful employment, contend, first, that the result reached in *Dublino* was premised upon the Court's finding that:

> New York . . . attempted to operate the Work Rules in such a manner as to avoid friction and overlap with WIN[,] . . . that every AFDC recipient appropriate for WIN was first referred there, that no person was to be referred to the state program who was participating in WIN, and that only if there was no position available for him under WIN, was a recipient to be referred for employment pursuant to state statute. *Id.* at 421, 93 S.Ct. at 2517

In contrast, plaintiffs suggest that the defendants' implementation and administration of its WIN program has been and continues to be fundamentally at odds with the Congressional design and intent and that the effect of Work Rule III will be to further hinder full compliance with the WIN program requirements.

In support of this contention, plaintiffs argue that numerous administrative problems have been encountered over the years and that the defendants have not taken full advantage of the funds made available to them to expand WIN either statewide or into specific areas suggested by other state and fed-

5. While plaintiffs contend that the Work Rule Materials are but a "forecast" of the future in that they are subject to modification by the Virginia Board of Welfare prior to their adoption, the Office of the Attorney General of Virginia has represented to the Court that no changes are anticipated and that, for the purpose of this action, these regulations present a live controversy to the Court. Moreover, the Court is aware of the

dilemma posed to the defendants, for if they approve the Work Rule Materials without the consent of the Court they may well be subject, once again, to a contempt citation for having violated the terms of the injunction presently in effect. For this reason, and on the basis of counsel's representation, the Court will treat the proposed Welfare Department regulations as being properly before the Court.

eral officials associated with WIN. It is the Court's view, however, that many if not all of these difficulties are of the type more appropriately addressed by cooperative federal-state efforts to achieve a mutually acceptable resolution.

Of greater substance, however, is plaintiffs' allegation that the manner in which the defendants intend to implement Work Rule III directly conflicts with section 402(a)(19)(A)(iii) of the Act, as amended, 42 U.S.C. § 602(a)(19)(A)(iii), which provides:

> [E]very individual, as a condition for eligibility for [AFDC], shall register for manpower services, training, and employment as provided by regulations of the Secretary of Labor, unless such individual is . . . (iii) a person so remote from a work incentive project that his effective participation is precluded; . . . .

In effect, plaintiffs argue that the defendants, by making Work Rule III "applicable . . . in localities not served by a Work Incentive Program (WIN) project," have created an unwarranted blanket exemption from mandatory referral to WIN for residents of political subdivisions in which WIN is not operating, which, at the same time, increases the number of recipients who are required to register for and participate in Work Rule III.

Defendants, in response to plaintiffs' charge, argue that section 432(a) of the Social Security Act, 42 U.S.C. § 632(a), and section 70.1.3 of the Department of Health, Education and Welfare, Social and Rehabilitation Services, Guidelines for the Work Incentive Program (hereinafter HEW WIN Guidelines), provide that entire areas of a state, geographic regions or territorial jurisdictions may be considered inappropriate for the WIN program on the basis of insufficient potential WIN applicants or on the basis of remoteness. They contend that this may mean, in a state such as Virginia, which has a locally administered welfare program, that the geographic character or assistance population of certain jurisdictions simply does not justify the cost and complexities involved in WIN. Defendants further allege that regardless of the reason, where the entire area has been determined to be inappropriate for WIN, all AFDC recipients in that area may be exempted from WIN registration by reason of remoteness.

In support of this position, defendants have submitted two letters addressed to Mr. William L. Lukhard, Commissioner of the Virginia Department of Welfare. The first, dated December 11, 1974, is from Mr. James S. Dwight, Jr., Administrator of the Department of Health, Education and Welfare Social and Rehabilitation Service. In his letter, Mr. Dwight indicates that he is responding to an inquiry made by Ms. Karen Kincannon, Assistant Attorney General for the Commonwealth of Virginia, concerning clarification of the requirement set forth in section 402(a)(19)(A)(iii) of the Social Security Act. Mr. Dwight states in part:

> Specifically [Ms. Kincannon] asked whether this means that the State must require WIN registration in every county in the State even though there may be no WIN project in some counties. The answer is no. If the State finds that the residents of particular Non-WIN counties are so remote from WIN projects that effective participation is precluded, the entire resident population of the county may be excused from registration.

The second letter submitted by the defendants is dated December 14, 1974. It is from Mr. J. Terrell Whitsitt, Assistant Regional Director for Manpower, United States Department of Labor, and Mr. Alwyn L. Carty, Regional Commissioner, Social and Rehabilitation Services, United States Department of Health, Education and Welfare and bears the letterhead "Work Incentive Program, Region III Task Force."

In this letter, which indicates that it is in response to Mr. Lukhard's question on the status of AFDC recipients and applicants residing in non-WIN counties

in terms of the requirement to register for pre-WIN services, Messrs. Whitsitt and Carty state in relevant part:

Each state WIN plan specifies the project areas for the State. Generally, these areas are described as a county or group of counties. Areas not included in the State WIN plan are considered to be remote. *Regardless of their proximity to a WIN project, all residents of non-WIN project areas are exempt from the registration requirement and thus are not required to register in order to be eligible for AFDC.* Remoteness exemptions within a WIN project area are granted on an individual basis in accordance with current WIN policy issuances on commuting distance. (Emphasis supplied).

It is the defendants' contention that these documents reflect federal agency policy in accord with their proposed implementation of Work Rule III.

Plaintiffs, in reply, allege that Mr. Dwight's letter of December 11, 1974, is consistent with their position in that, if the state finds that an entire county, for example, is "remote"—which is defined under HEW WIN Guideline § 70.1.3 as more than a two-hour daily round-trip for commuting—then all residents of the county are to be exempt from registratiion under section 402(a)(19)(A)(iii) of the Act, as amended. They further argue that the necessary corollary to Mr. Dwight's statement is that recipients living in non-WIN areas who are not "remote" under the Guidelines must be registered for participation in WIN.

Plaintiffs direct the Court's attention to the inconsistencies created by the Whitsitt-Carty letter of December 14, 1974 and a letter dated February 13, 1973 addressed to Mr. William L. Heartwell, Jr., Commissioner of the Virginia Employment Commission, from the same Mr. Whitsitt and a Mr. Francis L. Warren, who would appear to have been Mr. Carty's predecessor as Regional Commissioner of Social and Rehabilitation Services with the Department of Health, Education and Welfare. In that letter it is stated, again in relevant part:

The following items have been called to our attention with respect to the Work Incentive Program (WIN) in Virginia:

1. County residence appears to be a factor in making the determination as to whether or not a Welfare applicant must register for the WIN Program in Virginia.

\* \* \* \* \* \*

Section 402(a)(19)(A) of the Social Security Act, as amended, sets forth the requirement for registration in the Work Incentive Program and defines the conditions under which an individual may be considered exempt from registration in WIN. *Residence in counties where a local WIN program is not physically located is not sufficient basis for exempting an individual from WIN registration.* The amendments do provide for exemption from registration if a person is so remote from a Work Incentive project that his effective participation is precluded.

\* \* \* \* \* \*

In order to insure that the provisions of the legislation and the Federal regulations with regard to the Work Incentive Program are met, the following actions are requested:

\* \* \* \* \* \*

2. The Virginia Employment Commission and the Virginia Social Service Agency jointly determine and identify those areas of the State which are so remote from a Work Incentive project that Welfare recipients residing in those areas could not effectively participate in the program. In identifying remote areas, it should be realized that an individual should not be required to travel in excess of two hours (commuting time) per day. In addition, *in counties which do not have a WIN project, consideration should be given to the possibility of Wel-*

*fare recipients participating in WIN projects that operate in neighboring counties.* (Emphasis supplied).

Plaintiffs contend that there has been no intervening change in the law or regulations which would justify the diametrically opposed statements contained in the Whitsitt-Carty and Whitsitt-Warren letters.

■■ It is true, of course, as the defendants suggest, that when faced with a problem of statutory construction, courts should show great deference to the interpretation given the statute by the officers or agency charged with its administration, and that when the construction of an administrative regulation rather than a statute is in issue, deference is even more clearly in order. Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965). It is also true, however, that agency interpretations cannot override congressional purpose. King v. Smith, 392 U.S. 309, 333 n. 34, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). Furthermore, as this Court has previously noted with regard to the remoteness exemption to WIN registration contained in section 402(a)(19)(A)(iii) of the Social Security Act, as amended, the interpretation of the statute by those in charge of its administration remains somewhat ambivalent. Woolfolk v. Brown, *supra*, 325 F.Supp. at 1176.

In the memorandum opinion of April 22, 1971, the Court discussed at considerable length its view with regard to this particular portion of the Social Security Act. After noting the statutory geographic limitations contained in section 432 of the Act, 42 U.S.C. § 632, as well as the remoteness exemption from mandatory referral to WIN contained in what was then section 402(a)(19)(A)(v) of the Act, now 42 U.S.C. § 602(a)(19)(A)(iii), the Court went on to state:

This language seems to require a specific, individual finding by the welfare authorities that a given individual is inappropriate by reason of his location rather than the application of a general rule covering all in a certain area. Indeed the provision would seem to allow a finding that a resident of an area containing a WIN program was nonetheless too distant from it for mandatory referral, and it would be strange to give the language a different construction, calling for other than case-by-case consideration, in another context. 325 F.Supp. at 1175.

Also, in that opinion, this Court recited several regulations promulgated by both the Department of Labor and the Department of Health, Education and Welfare and noted that while there were some regulations which supported this rule there were also others which appeared to be inconsistent with it. In turning to the congressional purpose discernible from the statute and its legislative history for guidance in this matter, the Court stated:

Plainly § 632(a), in directing the Secretary of Labor to use his best efforts to transport appropriate persons to WIN programs outside their area of residence, signifies that persons not within so-called WIN areas are to be considered for referral to the program. Section 602(a)(19)(A) directs the referral of each appropriate AFDC beneficiary and makes an exception for cases where the state welfare agency determines that a person is in fact located too far from a program to take part. The Senate Report [No. 744, 90th Cong. 1st Sess., reprinted at 2 U.S.Code Cong. & Admin.News, 90th Cong. 1st Sess. 2834 (1967)], perhaps overly optimistically, expressed the hope that such a scheme would make WIN available to most recipients. The only sensible construction of the legislative plan is that, wherever situated, all AFDC beneficiaries have a right to be considered for referral to WIN and to be found either appropriate or inappropriate by the local welfare agency.

The House Report [No. 544, 90th Cong., 1st Sess. (1967)] as well envisions a comprehensive training program, required by statute to be made available to most AFDC recipients, and foresees the review of each recipient's case to determine whether he should participate:

> The objective is to have the program available in all the localities with enough recipients to make the project feasible. It may be possible for the State to arrange for smaller communities to be joined so that the appropriate size group will be available * * *. Your committee intends that a *proper evaluation be made of the situation of all mothers* to ascertain the extent to which appropriate child care arrangements should be made available so the mother can go to work * * *.

> Children over the age of 16 are expected to be participants in the program if they are not in school and it is otherwise found appropriate, under standards of the Secretary, that they receive this kind of experience. *All adults in AFDC families, and children, as described above, are expected to be considered for participation in this program.* H.R.Rep.No.544, *supra*, 104–105 (emphasis supplied).

The express legislative intent, then, is that consideration of the appropriateness of a particular person for referral will not be barred on the ground of his location; rather location is one of the factors which the welfare agency weighs in determining appropriateness. 325 F.Supp. at 1176.

Despite the passage of four years since the above-referenced statements of this Court, the defendants have failed to cite any relevant statutory or regulatory changes which would require the Court to alter its previous position. Moreover, the Court believes this view is supported by the current regulations of the Department of Labor concerning registration in WIN, which provide:

The Income Maintenance Unit of the local welfare agency . . . shall register AFDC applicants and recipients for manpower services, training and employment as required under section 402(a)(19)(A) of the Act. It shall determine whether the applicant or recipient and members of his family are required to register as a condition for receiving AFDC benefits. Each individual must register unless he is—

> \* \* \* \* \* \*

> (6) Residing at a location which is so remote from a WIN project so that more than a total of 10 hours would be required for a normal work or training day including round trip by reasonable available public transportation from his home to the WIN project.

29 C.F.R. § 56.4(a).

On the basis of the instant record, it is clear that there are approximately 16,231 AFDC recipients currently residing in political subdivisions of the Commonwealth of Virginia not serviced by the WIN program. It is also clear that under the defendants' interpretation of WIN and their proposed method for implementing Work Rule III, no individualized determination of remoteness which would preclude effective participation in a WIN project will be made for any of these AFDC beneficiaries, but rather, each will be required, unless otherwise exempted by reason of age, incapacity, school attendance, necessity of presence in the home or lack of transportation, to participate in the state work program. As a result of this policy, some AFDC recipients who are neither "remote" nor otherwise exempt from WIN projects—as defined by the Social Security Act and applicable agency regulations—will not be registered for pre-WIN services.

The Court concludes, therefore, that the defendants are not in compliance with the requirements of section 402(a)(19)(A) of the Act, as amended,

nor can Work Rule III be implemented as planned without further frustrating the Congressional design of the WIN program. Accordingly, finding nothing in New York Department of Social Services v. Dublino, *supra*, 413 U.S. 405, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973), to mandate a contra ruling, the defendants' motion to vacate the previous injunctive orders of this Court will be denied.

■ Although in light of the Court's intended disposition of defendants' motion on the aforementioned ground it is not essential for the Court to consider other specific conflicts between Work Rule III and WIN alleged by plaintiffs, the Court finds that at least some brief mention of them is appropriate at this time in order to aid the defendants should they be disposed in the future to renew their motion to vacate. First, the Court would note that it finds little merit in plaintiffs' contention that the Work Rule lacks the testing, counseling and individualized employability plan services provided to WIN participants under 42 U.S.C. § 633. In light of defendants' representations concerning the placement procedures and counseling services available to Work Rule participants, the Court does not find Work Rule III to be in substantial conflict with WIN.

■ The Court would also note that it finds little merit in plaintiffs' suggestion of a conflict based upon the Work Rule's alleged failure to provide a temporary exemption should a registrant take issue with a welfare worker's finding that he must participate in the program. Since each applicant or recipient is entitled to a hearing, pursuant to section 63.1–133.13 of the Code of Virginia, on the question of whether he is exempt from registration under the Work Rule, the Court finds that these procedures are adequate to protect the rights of AFDC beneficiaries. Similarly, with regard to plaintiffs' contention that monies expended to comply with the job-search provisions of Work Rule III will result in a *de facto* grant reduction, the Court finds the reimbursement provisions of WIN to be optional with the state and, therefore, need not be followed in order to achieve compliance with the Act.

■ Finally, the Court finds, with certain limited exceptions, that, contrary to plaintiffs' assertions, Work Rule III neither conflicts with WIN in terms of its definition of "disability" or "incapacity" nor in its standards of appropriate work, to the extent that other provisions governing the Virginia Employment Commission and the Department of Welfare prohibit discrimination on the basis of sex and prevent the use of Work Rule participants to fill job vacancies created by labor disputes.

In other respects, however, the Court believes that plaintiffs' allegations of specific conflict are well-taken. First, plaintiffs allege that under the defendants' policy for implementing Work Rule III no provision is made to comply with the Department of Labor WIN regulation which requires that all persons exempt from WIN registration may voluntarily register for manpower services, training or employment. 26 C.F.R. § 56.4(f). Plaintiffs contend that pursuant to this regulation, even individuals who are properly determined to be "remote" from WIN projects may nevertheless volunteer for WIN services. Defendants, on the other hand, argue that current federal regulations allow a person exempt from WIN to volunteer for registration and be included in the program only if they reside in a so-called WIN locality, which is, in defendants' view, a political subdivision of the state in which a WIN project is operating.

■ Under the terms of the Department of Labor regulation cited by plaintiffs, no distinction is made between AFDC beneficiaries exempt from WIN registration on the basis of their remoteness from WIN projects, as opposed to those found exempt on other grounds. It logically and reasonably follows, therefore, that any AFDC recipient ex-

empt from WIN may voluntarily register for the benefits made available through WIN. Furthermore, for this right of voluntary registration to be meaningful, exempt AFDC beneficiaries must be informed of its availability. Hence, to the extent that the defendants do not apprise AFDC applicants and recipients of their right to participate in WIN, though technically exempt from mandatory registration, while at the same time they require some beneficiaries to register under Work Rule III, the Work Rule is indeed in substantial conflict with the Social Security Act and applicable federal regulations.

 With regard to the question of wages to be paid to participants in the Work Rule program, section 63.1–133.-8(a) of the Code of Virginia mandates reasonable compensation, which is defined as an amount not less than the federal or state minimum hourly wage, or, if neither is applicable, the prevailing wage for a comparable position in the immediate geographic area. Plaintiffs contend that this provision conflicts with WIN which requires that the wages paid to participants in the program must be at least three-quarters of the federal minimum wage. See DOL WIN Handbook § 9360.3.a.1. To the extent the wage provisions of the state work rule allows participants to be placed in jobs apparently not considered appropriate for WIN participants, the Court concludes the Work Rule conflicts with the policies of WIN.

 Finally, plaintiffs point to a provision in the Work Rule not found in WIN which declares ineligible for public assistance any person who willfully refuses to accept medical or dental care (except surgery involving risk) which would render him employable. Work Rule Material § E.3. Plaintiffs allege that under this provision, a person who is considered to be incapacitated under the WIN standards could be forced to undergo medical treatment with no limits other than the parenthetical "except surgery involving risk." Since this eligibility standard would place a greater burden upon work rule participants than is placed upon those participating in WIN, it may not be utilized to defeat a recipient's entitlement to AFDC benefits. Moreover, while a determination of ineligibility under this provision would be subject to review at a fair hearing, no viable standards have been proposed under which an AFDC beneficiary's due process rights might be accorded adequate protection.

 In conclusion, the Court wishes to emphasize that today's decision does not mean that the defendants must adopt every policy and procedure provided under WIN in order to effectuate a valid state work rule program. It does mean, however, that the defendants may not deal with AFDC beneficiaries exempt from WIN participation, regardless of the basis for their exemption, in such a manner which effectively violates their rights under the Social Security Act or places them at a disadvantage when compared with those AFDC applicants or recipients for whom WIN registration is mandatory. Therefore, to the extent that the defendants' proposed implementation of Work Rule III had been found by the Court to be in conflict with WIN, rather than complementary to it, the injunctive orders previously issued will remain in full force and effect.

An appropriate order will issue.