Vivian WOOLFOLK, Individually and on behalf of her minor child, Helene L. Woolfolk, and on behalf of all others similarly situated, by her mother and next friend, Ora Maxine Woolfolk, Appellees,

v.

Otis L. BROWN, Director of Department of Welfare and Institutions, State of Virginia et al., Appellants.

No. 75–1730.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 8, 1976.

Decided June 30, 1976.

---

Anthony F. Troy, Chief Deputy Atty. Gen. of Va., Richmond, Va. (Andrew P. Miller, Atty. Gen. of Va., Karen C. Kincannon and Gilman P. Roberts, Jr., Asst. Attys. Gen., Richmond, Va., and Kenneth W. Thorson, Summer Intern, on brief), for appellants.

John M. Levy, Neighborhood Legal Aid Society, Inc., Richmond, Va. (Dennis R. Yeager, National Employment Law Project, New York City, on brief), for appellees.

Before CRAVEN, RUSSELL and WIDENER, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

This appeal arises out of a claim of substantial conflict between the Virginia work incentive program (hereinafter referred to as Work Rules) and the Federal Work Incentive Program (hereinafter referred to as WIN) under the cooperative federal-state AFDC program, as authorized under Title IV of the Social Security Act of 1935, 42 U.S.C., § 601 *et seq.* It involves a controversy that has long been the subject of litigation between the officers charged with the administration of the AFDC program in Virginia and the plaintiffs, who are persons living in Virginia and entitled to benefits under the cooperative federal-state system and who assert that their right to such benefits is illegally threatened by the provisions of the Virginia Work Rules.

In the earlier actions, the first system of state-legislated Work Rules was found defective in *Woolfolk v. Brown* (E.D.Va.1971)

325 F.Supp. 1162. The Commonwealth sought to amend its Rules in order to correct the defects found by the Court in its earlier Work Rules in such decision. But these amended Work Rules were also found invalid by the District Court which issued its order enjoining the application of the State Work Rule to the plaintiff class.[1] The Commonwealth then amended a second time its Work Rules and on the basis of these amendments sought the dissolution of the injunction theretofore granted against the Commonwealth and its officers. The District Court concluded a third time that the Rules departed impermissibly from the mandatory standards established by the federal Act and accordingly denied the implementation of Work Rule III.[2] It is from this third decision that defendants prosecute their appeal.[3] We reverse.

Under the provisions of Title IV of the Social Security Act, a cooperative federal-state program was authorized "through which federal funds would be granted to qualifying States in order to provide aid to dependent children." *Philbrook v. Glodgett* (1975) 421 U.S. 707, 709, 95 S.Ct. 1893, 1896, 44 L.Ed.2d 525. As a part of this program, it was provided that the Secretary of Labor "shall * * *, establish work incentive programs * * * in each State [qualifying under the Title] and in each political subdivision of [such] State in which he determines there is a significant number of individuals who have attained age 16 and are receiving aid to families with dependent children." § 632(a), 42 U.S.C. These federal work incentive programs, commonly known as WIN, were not, however, designed to be "all embracing" or "preemptive" in the field of work incentive programs within a State and were to constitute merely "a partial program," in providing such services to AFDC recipients within the State. There remained with the State itself, under the "scheme of cooperative federalism" contemplated by the Title, "considerable latitude" for developing a work incentive program of its own under Work Rules devised by it to accomplish the very purpose stated in the Virginia Act challenged here, which tracked substantially the statement of the Supreme Court itself in *New York Dept. of Social Services v. Dublino* (1973) 413 U.S. 405, at 413, 418–20, 93 S.Ct. 2507, 37 L.Ed.2d 688, declaring what is a proper legislative purpose for such Rules.

In Virginia, certain counties have been designated by the Secretary of Labor as WIN areas.[4] In such areas, all AFDC recipients are required under the Act to register for inclusion in a work incentive program with the officials in charge of the WIN operation. Under the Virginia Work Rule under attack here, on the other hand, all AFDC recipients living in the non-WIN areas in the State must register for participation in the work incentive program established by the State Work Rules.[5] The basic controversy here focuses on the construction of § 602(a)(19)(A)(iii), 42 U.S.C., which provides that AFDC recipients shall register under WIN unless the recipient is "a person so remote from a work incentive project that his effective participation is precluded."[6] The plaintiffs are AFDC re-

---

**1.** *Woolfolk v. Brown* (E.D.Va.1973) 358 F.Supp. 524, 534.

**2.** Code of Virginia (1950), §§ 63.1–133.7 through 63.1–133.15, as amended [S. 283, Virginia Work Rule, Work Rule III].

**3.** The history of this litigation is set forth in the memorandum opinion of the District Court in this case, *Woolfolk v. Brown* (E.D.Va.1975) 393 F.Supp. 263, 266–267.

**4.** As a rule, WIN programs are established in political subdivisions containing more than 1,100 AFDC recipients.

**5.** The record reveals that there are approximately 16,231 AFDC recipients in Virginia who would be required to participate in Work Rule III.

**6.** The plaintiffs complain at some length because of what they refer to as the State's "underutilization" of the WIN program. Whether a political subdivision is to be designated as a WIN area is a matter committed to the judgment of the Secretary of Labor, after receiving recommendations from the proper State officials. The Courts have no right to assume powers committed by Congress to the executive departments. This argument of the plaintiffs, therefore, presents no justiciable issue.

cipients living in the non-WIN areas. They contend that, despite the fact that they are not embraced geographically in WIN, they are entitled under this section of the Act to register and participate in its program, unless it is determined on a "case-by-case" or individual basis that he lives too remotely for participation, and they argue that the State Work Rules which require their registration under such Rules and which would deny them any right to register under the WIN program impermissibly conflict with § 602(a)(19)(A)(iii). The defendants take the position, on the other hand, that § 602(a)(19)(A)(iii) applies only to AFDC recipients living within the area designated by the Secretary as a WIN area and has no relevancy to the right of AFDC recipients living without the WIN area. The District Court agreed with the plaintiffs' construction of the section, stating:

> "The only sensible construction of the legislative plan is that, wherever situated, all AFDC beneficiaries have a right to be considered for referral [now registration] to WIN and to be found either appropriate or inappropriate by the local welfare agency." 393 F.Supp. at 278.

We disagree.

At the outset it should be noted that the construction placed by the District Court on the section would make the Secretary's designation of a single county or political subdivision as a WIN area "all embracing" within a State. This appears so because, under that construction, every AFDC recipient within a State with a WIN-designated area, irrespective of where he lived in that State, whether in WIN or without, would be entitled to participate unless it was determined on an individual "case-by-case" basis that he was too remote. Such a con-

struction would make meaningless, as a practical matter, the geographic delineation of WIN as made by the Secretary. It would, also, impose an intolerable administrative burden on welfare officials, who would be forced to review the individual situation of every AFDC recipient in a participating State with even one WIN area in it. It is highly unlikely that Congress, which is alive to the already grievous financial burden borne by both federal and state governments in the administration of the welfare programs, intended by this section to add to those administrative burdens.

■ In our opinion the section in question is confined in application to AFDC recipients living in the WIN area and is not concerned with such recipients living in non-WIN areas. It relates to the operation of a WIN program; it has no reference to areas without the designated WIN area. It contemplates, as we view it, that, within the WIN area, there may be AFDC recipients too remote from a "project" set up in that area under WIN. It, by this section, was making provision for their exemption from registration under WIN. That and that only was the purpose of the section. Specifically, it was not intended as an exemption in the case of recipients outside the WIN area.

■ We are confirmed in this conclusion by the administrative construction of the section.[7] Such administrative interpretations are particularly relevant in the construction of this legislation, since the Secretary of Labor is expressly empowered to provide by regulations the requirements for registration under the WIN programs.[8] The District Court, however, found the administrative constructions of the section

---

7. The plaintiffs find something sinister in the Department's conduct in this matter and in its issuance of opinions and Regulations. They would suggest that the Department has sought improperly to support the defendants in their defense of these proceedings by its Regulations. We find nothing improper in the actions of the Department. If it gave the defendants the opinions to which the plaintiffs object, it did no more than it should have done in con-

nection with the administration of a cooperative federal-state program. So far as the recent Regulations are concerned, they accord largely with the prior opinions given the state officials and plaintiffs should not have been surprised that the Department conformed its Regulations with the opinions it had already given on the proper construction of § 602.

8. § 602(a)(19)(A), 42 U.S.C.

"ambivalent." [9] We are not persuaded that this is so, but, whether "ambivalent" or not at some earlier time, the administrative construction is now crystal clear. Thus, in a Regulation issued on September 18, 1975, the Department states unequivocally:

"Each AFDC applicant and recipient shall register unless he is:

\* \* \* \* \* \*

"(6) Residing outside of a WIN project area specified in the State WIN plan or residing within a WIN project area at a location which is so remote from a WIN office or service unit that effective participation in the program is precluded. \* \* \* " 45 C.F.R. 224.-20(b)(6).

Furthermore,

"(4) Exempt applicants and recipients in WIN project areas may choose to register, voluntarily for manpower services, training, and employment, \* \* \*." 45 C.F.R. 224.20(c)(4).

■ As the District Court observed, "great deference" is to be accorded to the construction of a statute by the agency charged with its administration. This construction, incorporated in effective Regulations of the administrative agency charged with the implementation of the section, represents, in our opinion, the proper interpretation of the section. We accordingly find no impermissible conflict with the federal Act in the provisions of the State Work Rule, which requires all AFDC recipients living without a WIN area or locality in the State to register pursuant to the State Work Rule.

■ As a corollary to their contention that they had a right to register under WIN unless found too remote, the plaintiffs raised the point that by token of the same argument, they, even if exempt from registration under WIN by the remoteness provision, were entitled to register voluntarily for manpower services, training or employment under the WIN program.[10] This right flows entirely from a departmental regula-

tion; it is no part of the Act itself. Other regulations cited above, specifically confine this right to "volunteer" to AFDC recipients living in the designated WIN area or locality. Since the right is thus not given to AFDC recipients subject to the State Work Rules, we, unlike the District Court, find no conflict here in the federal Regulations and Work Rule III.

■ The District Court found an impermissible conflict with the federal Act in the State Work Rules' wage provisions and their provisions for denial of assistance to "any person who willfully refuses to accept medical or dental care (except surgery involving risk) which would render him employable." The defendants, while not conceding that their Rules are violative of the wage requirements of the Act, have agreed to amend their Work Rule to conform to the District Court's requirements in this regard. So far as the other objection is concerned, the defendants urge that their standards for determining a recipient's right in this regard are as definite and precise as the federal standards for enforcing a similar provision in the federal plans. Considering the latitude accorded the State authorities in establishing their own Work Rules under the Act, we are not persuaded that such Rules, in their provision for the exercise by a recipient of his due process rights under the medical provisions thereof, are invalid. As noted in *Jefferies v. Sugarman* (2d Cir. 1973) 481 F.2d 414, 417, *cert. denied* 420 U.S. 924, 95 S.Ct. 1119, 43 L.Ed.2d 393 (1975), "the Supreme Court's acknowledgement that the states have some latitude in formulating their own employment rules, \* \* \* may indicate that such inconsistencies with the federal law as will justify invalidation must be more substantial than suggested by the district courts in either *Dublino* or the instant case."

The plaintiffs raised some objections to the State's Work Rules, which the District Court found without merit. We have ex-

---

**9.** 325 F.Supp. at 1176.

**10.** 29 C.F.R. 56.4(f).

amined these objections and we agree with the conclusions of the District Court in regard thereto.

Since we have concluded that the several provisions of the State's Work Rules found invalid by the District Court (with the exception of those relating to wages, which are to be amended to conform to the requirements stated in the opinion of the District Court) were not in conflict with the Social Security Act itself, it was error in the District Court to refuse to dissolve its injunction prohibiting the defendants from implementing such Work Rules. We accordingly remand the cause to the District Court, with direction that it issue its order dissolving its injunction.

AFFIRMED IN PART, REVERSED IN PART and REMANDED WITH DIRECTIONS.